UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 3:00-cr-136-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| LEON STAMPER, JR., | ) | **ORDER GRANTING MOTION FOR** |
| | ) | **COMPASSIONATE RELEASE** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Leon Stamper, Jr.'s Compassionate

Release Motion, styled a Request for Reduction in Sentence Under § 3582(c)(1)(A). [R. 238].

The United States responded that is has no opposition to the Motion [R. 244]. For the reasons

stated herein, Defendant's Motion is **GRANTED**.

## I.   Background

In 2002, a jury convicted Stamper of carjacking; interfering with commerce by threat or

violence, in violation of the Hobbs Act, 18 U.S.C. § 1951(a); using a firearm during a crime of

violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); unlawfully transporting and possessing

firearms as a felon; and transporting stolen vehicles. [R. 166]. The district court originally

sentenced him to a total term of 360 months of imprisonment. [R. 149]. Stamper's convictions

were affirmed on appeal but remanded for resentencing. *United States v. Stamper*, 91 F. App'x

445, 465 (6th Cir. 2004). Stamper was re-sentenced to 319 months imprisonment to be followed

by 5 years of supervised release. [R. 166]. Stamper's efforts to vacate his sentence were

unsuccessful. [R. 233; R. 234]. Mr. Stamper is housed at the Federal Medical Center in

Lexington, Kentucky (FMC Lexington). His projected release date is June 9, 2023. [R. 238-1,

p. 18]. On September 13, 2021, Defendant moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), known as a "compassionate release," in light of his significant medical issues (which include Acute Myeloid Leukemia and Graft-Versus-Host Disease) and the COVID-19 pandemic. [R. 238, p. 1–2].  Stamper has served nearly 21 years in prison for his crime, roughly 90% of his sentence.

## II.  Legal Standard

The compassionate-release statute allows the Court to reduce the term of imprisonment and impose a term of probation or supervised release under certain narrow circumstances. Section 3582(c) provides that:

> The court *may not* modify a term of imprisonment once it has been imposed *except that*—
>
> (1) In any case—
>
> > (A) *the court*, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, *may reduce the term of imprisonment* (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that*—
>
> > > (i) *extraordinary and compelling reasons warrant such a reduction . . .*
> > >
> > > *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.*

18 U.S.C. § 3582(c)(1)(A) (emphasis added). Prior to the First Step Act of 2018 (FSA), Pub. L. No. 115–391, 132 Stat. 5194 (Dec. 21, 2018), only the director of the Bureau of Prisons (BOP) could move for a sentence reduction under section 3582(c). 18 U.S.C. § 3582(c)(1)(A) (2017); *United States v. Jones,* 980 F.3d 1098, 1104 (6th Cir. 2020). However, under the FSA, courts may now consider motions by defendants so long as the defendant satisfied the statute's

exhaustion requirement—that is, "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Exhaustion by one of the two means listed is a "mandatory condition" to the Court granting compassionate release. *United States v. Alam*, 960 F.3d 831, 833−35 (6th Cir. 2020). If the government "properly invoke[s]" the condition, the Court must enforce it. *Id.* at 834 ("Nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions.").

Upon satisfying the exhaustion requirement (or upon waiver by the government of this requirement), the statute requires the Court to undertake a three-step test in reviewing compassionate-release motions. *Jones*, 980 F.3d at 1107–08. At step one, the Court must "find" whether "extraordinary and compelling reasons" warrant a sentence reduction. *Id.*; 18 U.S.C. § 3582(c)(1)(A)(i). At step two, the Court must "find" whether a reduction in the sentence is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 1108; 18 U.S.C. § 3582(c)(1)(A)(i). At step three, the Court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)). In reference to step two, the Sentencing Commission in 2006 issued its policy statement in § 1B1.13 of the United States Sentencing Guidelines and the application notes to that section. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 (2006). However, because this policy statement has not been updated since passage of the First Step Act in December 2018, the Sixth Circuit recently held that § 1B1.13 is inapplicable to compassionate-release motions filed by the prisoner (as opposed to motions filed

by the Director of the Bureau of Prisons). *Jones*, 980 F.3d at 1109–11; *see also United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Consequently, in cases like this one, where the defendant files a motion for compassionate release, "federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111. Further, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Elias*, 984 F.3d at 519. Of course, when granting a compassionate-release motion, the district court must address all three steps in its analysis. *Id.* The defendant bears the burden of establishing a sentence reduction is warranted. *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

With these standards in mind, the Court will now turn to the substance of Defendant's Motion.

### III.   Discussion

As an initial matter, the Court will first address whether Defendant has satisfied the administrative exhaustion requirement. *Alam*, 960 F.3d at 833−35. The United States does not contest exhaustion, and Defendant provides proof of his numerous attempts to obtain compassionate release from the Warden, and the Warden's denial of relief. [R. 238-3]. The Motion is properly before the Court. *Alam*, 960 F.3d at 833−35.

### A.  Extraordinary and Compelling Reasons

The Court next considers whether the Defendant meets the substantive requirements for compassionate release as outlined by the Sixth Circuit in *Jones*. At step one, the Court must find that "extraordinary and compelling reasons" warrant a sentence reduction. § 3582(c)(1)(A)(i); *Jones*, 980 F.3d at 1107–08. The statute does not define "extraordinary and compelling" and, as

mentioned above, the *Jones* Court recently held that the Sentencing Commission's policy statement in U.S.S.G. §1B1.13 is inapplicable. *Jones*, 980 F.3d at 1111. Consequently, until the Sentencing Commission updates § 1B1.13 post–First Step Act, "district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at 1110.

In his Motion, Defendant explains that he suffers from numerous, significant medical conditions that leave him immunocompromised and place him among the most vulnerable to COVID infection in the entire BOP system. [R. 238]. Stamper has submitted medical records from UK Healthcare and the BOP substantiating his serious medical conditions, which include a 2018 diagnosis of Acute Myeloid Leukemia (AML) and Graft-Versus-Host Disease (GVHD) which developed after a 2019 bone marrow transplant.  [R. 238-1, pp. 2–6]. AML is a type of cancer that affects the bone marrow and blood. Myeloid cells are the precursors to other blood cells including red blood cells, platelets, and white blood cells. When a person has AML, the myeloid cells mutate and can keep the body from making normal, healthy cells. For many people, AML is a treatable disease with chemotherapy which can lead to remission. It is a more serious disease in persons over the age of 60, like Stamper, who will be 63 years old upon release. According to the National Cancer Institute, the five-year overall survival rate for AML is 29.5 percent. NAT'L CANCER INST., Cancer Stat Facts: Leukemia — Acute Myeloid Leukemia (AML) (last visited November 11, 2021), available at https://seer.cancer.gov/statfacts/html/amyl.html.

GVHD is a potentially serious complication of the bone marrow transplant Stamper received for his AML. GVHD can be mild, moderate, or severe. It can also be life threatening. The medications used to treat GVHD suppress the immune system. NAT'L CANCER INST., Blood-

Forming Stem Cell Transplants (last visited November 11, 2021), available at https://www.cancer.gov/about-cancer/treatment/types/stem-cell-transplant/stem-cell-fact-sheet. *see also* [R. 238-2]. GVHD is a chronic condition, and Stamper's suppressed immune system makes him especially susceptible not only to COVID-19 but every other virus, bacteria, and disease found in prison, where the potential for exposure is high due to challenges in implementing social distancing. As Stamper recounts, his BOP doctor advised that GVHD "is a delicate balance between life and death." [R. 238, p. 2]. Along with AML and GVHD, Stamper also suffers from hepatitis, gall bladder issues, complications from hernia repair, recurring diarrhea, and mental decline commonly associated with cancer diagnosis. *Id.* at 3.

The United States does not contest the well-documented medical evidence provided by Defendant in support of his Motion and agrees that is medical conditions meet the "extraordinary and compelling" test for compassionate release. The Court agrees.  Based on Mr. Stamper's numerous and significant health issues, his severely compromised immune system, and his age, Mr. Stamper easily presents an extraordinary and compelling case for release, as the government acknowledges.

### B.  Balancing Under § 3553(a)

Even though Mr. Stamper's health conditions satisfy step one of the *Jones* inquiry as extraordinary and compelling, release is warranted only if it is consistent with the sentencing factors set out in 18 U.S.C. § 3553(a), which include in part: the nature and circumstances of the offense; the Defendant's history and characteristics; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public from further crimes, and avoid unwarranted sentencing disparities. § 3553(a)(1)–(7); *see also Jones*, 980 F.3d at 1112–16 (discussing the district court's obligation

to weigh the § 3553(a) factors and to provide specific factual reasons for its decision that furnish a thorough factual record for review). This Court need not "specifically articulat[e]" every single § 3553(a) factor as part of its analysis. *Jones*, 980 F.3d at 1114. Rather, the record "as a whole" (the original sentencing proceeding and the modification proceeding) must confirm the district court considered the "pertinent" factors. *Id.* at 1115. This Court has thoroughly reviewed the record in this case, along with the parties' arguments and submissions related to the current Motion, and is convinced that release is warranted under the statutory factors.

First, the "nature and circumstances of the offense and the history and characteristics of the Defendant," counsel in favor of release. To be sure, the gravity of Defendant's crime is not in question. He committed the heinous crime of carjacking, held an innocent man at gunpoint and in fear of his life (also physically assaulting him), then took off on a cross country joyride in a stolen Trans-am. He was already a convicted felon at the time, precluded from possessing a firearm. In support of his Motion, Defendant urges: "I am not the person who stood in front of this court 21 years ago." [R. 238, p. 3]. His well-written *pro se* Motion, along with the records and letters attached, support Stamper's position that he is a changed man. While incarcerated, Stamper has diligently prepared himself for the future and "made re-education, education, and [his] faith" his focus. [R. 238, p. 1]. As he puts it, he has "worked diligently towards a future re-entry as anyone [he] has ever met while incarcerated." *Id.* at 3. He completed nearly 90 courses of study and earned his GED while incarcerated. *Id.*; [R. 238-1, pp. 18–21]. Further, despite his 21-year incarceration, his prison record is virtually unblemished, and he is considered a low risk of recidivism. [R. 238-1, pp. 18–21].

Mr. Stamper also has a firm re-entry plan. [R. 238-1, pp. 7–12]. He owns a home debt free in Kentucky and has ensured taxes were paid on the property throughout his incarceration.

[R. 238]. The U.S. Probation Office has approved the residence for re-entry. R. 238-1, pp. 11–12]. Stamper also enjoys significant family support, as evidenced by the multiple letters written on his behalf from family who stand ready to help Stamper with his medical and other needs. [R. 238-1, pp. 13-17]. He has a plan to obtain medical insurance, social security benefits, and notwithstanding his health issues, hopes he can "get back into the building trades, construction and handyman work" he enjoyed before incarceration. [R. 238, p. 4].

   As Mr. Stamper writes, he has "served his time well." Mr. Stamper committed a heinous crime, and he earned a significant sentence as a reflection of that crime. He has now served 90% of his sentence (nearly 21 years), with the last three years served under extreme circumstances given his AML and GVHD diagnosis and the COVID-19 pandemic. A sentence of time served is sufficient to protect the public. Mr. Stamper poses no danger to the community, as evidenced by his significant medical conditions, his age, his BOP record, his extraordinary rehabilitative efforts, and the obvious, positive changes in Mr. Stamper as reflected in his Motion and supporting documents. Further, monitoring by the U.S. Probation Office during his 5 years of supervised release further persuades the Court that he will not be a danger to society upon release. In addition, as the United States agrees, release at this point would afford adequate deterrence and just punishment—since he served roughly 90% of his sentence. [R. 244, pp. 7-8]. Moreover, he has served much of the last three years battling significant health conditions as well as the COVID-19 pandemic and its resulting conditions of lockdown. Upon release, Mr. Stamper will serve a significant period of supervised release and will be monitored by the U.S. Probation Office.

   Service of 90% of his sentence under extreme conditions will ensure the twin goals of just punishment and respect for the law are honored and militate against any risk of unwarranted

sentencing disparity. The Court has considered the other § 3553(a) factors, including the kinds of sentences available, any applicable policy statements, the need to avoid *unwarranted* sentencing disparities, and the need to provide restitution. *See* § 3553(a). None of these factors precludes release, and notably, Stamper has been making significant strides toward his court-ordered restitution. [R. 238, p. 5; R. 238-1, p. 20]. The compassionate release statute is specifically designed to provide relief to prisoners just like Mr. Stamper -- that is, those with severe and well-documented medical conditions that place them at significant higher risk of severe COVID-19 complications (as well as other complications that arise from the prison environment) who have demonstrated a commitment to positive change and who do not pose a danger to society. This Court could hardly improve on Mr. Stamper's words:

> I am no longer the 20 year younger firebrand I once was. I have focused my life, my education, and my recovery on my goal of being home again. Not just to survive in Prison, but to have learned the very lessons my incarceration was meant to teach me. Taking my restitution seriously, I have paid off a considerable amount and will continue to pay this obligation until it is satisfied.

[R. 238, p. 5]. After weighing all the § 3553(a) factors and given the unique and grave risk posed by Mr. Stamper's medical conditions, his age, his extensive rehabilitative efforts over 21 years in BOP custody, his virtually unblemished record while in custody, and the fact that he has served roughly 90% of his sentence, release is warranted.

Mr. Stamper will be 63 years old upon release, and he suffers from life-threatening diseases. He is being given a unique opportunity to manage these health conditions outside the prison environment and to have another chance at becoming a productive member of society and positive influence on his family and community. His well-written and earnest *Pro se* Motion demonstrates he is determined to use his time upon release wisely and productively.

For these reasons, this Court will exercise its considerable discretion and grant release under the conditions outlined below.

Accordingly, the Court being sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1.      Defendant's Motion for Compassionate Release [**R. 238**] is **GRANTED**.

2.      Defendant Leon J. Stamper Jr.'s sentence of incarceration is hereby **REDUCED to TIME SERVED effective November 13, 2021 at 2:00 PM (EDT).**

3.      The Bureau of Prisons shall release Defendant on **November 13, 2021 at 2:00 PM, or as close as possible to that time.**

4.      Upon his release, Defendant shall begin serving the five-year term of supervised release and the originally imposed conditions that the Court imposed in the Amended Judgment. [R. 166]. The Court will enter an amended judgment consistent with this Order.

This the 12th day of November 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc:     Counsel
        *Pro se* Defendant Leon Stamper, Jr.
        U.S. Probation Office, Eastern District of Kentucky
        U.S. Probation Office, Western District of Kentucky
        U.S. Marshal
        Bureau of Prisons